UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

       v.

VERNON LOHAN,

                      Defendant.

**DECISION AND ORDER**
13-CR-152A

---

## I. INTRODUCTION

Pending before the Court is a motion (Dkt. No. 32) by defendant Vernon Lohan for reconsideration of his detention status. Defendant has been in custody since his pre-indictment initial appearance on January 15, 2013. In support of reconsideration, defendant argues that his circumstances have changed due to a psychological report dated June 7, 2013 from forensic psychologist Dr. Daniel Antonius ("Antonius"). In the report, Antonius concluded that defendant has problems controlling impulses and feelings of frustration but also presents a low risk of violence and has realistic plans for employment, education, and continued counseling. Defendant urges the Court to accept the Antonius report and to release him to the residence of his paternal grandmother, who purportedly has a land line for electronic monitoring and is willing to accept him.

The Government opposes release on the basis that defendant's supposedly low risk of violence could change rapidly given his history of poor

impulse control. In fact, the Government cites the very existence of this case as evidence of defendant's danger to the community; defendant had entered a pretrial diversion agreement but violated it within months when he threatened his former attorney, the very attorney who negotiated that agreement for him. The United States Probation Office ("USPO") recommends continued detention given defendant's poor impulse control and his refusal to allow Antonius to contact his family members to obtain background information.

The Court held a bail review hearing on September 12, 2013. For the reasons below, the Court grants the motion conditionally and sets minimum conditions of release to be supplemented by recommendations from the USPO.

## II. BACKGROUND

This case concerns allegations that defendant made numerous harassing telephone calls to the mayor, city employees, and police department of Mississauga, Ontario. According to the pre-indictment complaint, filed on January 14, 2013 (Dkt. No. 1), as far back as September 2010, defendant made harassing telephone calls and sent harassing e-mail messages to Mississauga city employees and the Peel Regional Police.[1] Defendant's telephone calls led to charges and a guilty plea in Canada in May and June 2011; defendant

---

[1] The Court takes judicial notice that the Regional Municipality of Peel, also known as the Peel Region, is a regional municipality in Southern Ontario that includes the city of Mississauga. *See generally* Region of Peel website, located at http://www.peelregion.ca (last visited September 18, 2013).

subsequently received a sentence of three years of probation including conditions prohibiting him from contacting Mississauga city employees and the Peel Regional Police and prohibiting him from visiting Canada for three years. Thereafter, defendant allegedly called the Mayor of Mississauga 376 times at her home and 432 times at her office, all between September 1 and December 29, 2011.  The Antonius report clarifies that defendant's behavior traced back to a recurring focus on persuading Canadian law enforcement to investigate possible drug activity and prostitution in Mississauga strip clubs.  Defendant's alleged conduct eventually led to charges in this District, but on October 22, 2012, defendant entered the Pretrial Diversion Program.  In the pretrial diversion agreement, defendant agreed to stop communicating with Canadian authorities, among other conditions; in exchange, the Government agreed to drop all charges if defendant could abide by his conditions for 12 months.

     Defendant's unwillingness to follow the conditions of his pretrial diversion agreement led to his expulsion from the program within a few months.  The record indicates that almost immediately after entering pretrial diversion, defendant began sending unspecified documents to Peel Regional Police as part of a civil lawsuit that he was preparing against them.  The sending of these documents constituted contact with the victim identified in the pretrial diversion agreement, and defendant received a reprimand.  Defendant's decision to send the documents so soon after entering pretrial diversion apparently created

tension between defendant and his former attorney, who negotiated the pretrial diversion agreement. This tension led to a telephone call that defendant made to his former counsel on January 12, 2013. Defendant left a profanity-laced message that threatened physical violence, though defendant now has claimed to Antonius that he had no intention of carrying out the threat. The threatening telephone call led to defendant's termination from pretrial diversion and the filing of the complaint in this case. After a detention hearing on April 15, 2013, the Court ordered defendant detained as a danger to the community, but without prejudice to reconsider once a mental health evaluation occurred. The Court stated then that it would consider any mental health evaluation a change of circumstances justifying reconsideration.

After pre-indictment delays related to arrangements for the Antonius evaluation and a change of counsel stemming from a personality conflict, the Government filed a one-count indictment on July 11, 2013. (Dkt. No. 26.) In the indictment, the Government states that defendant "did make telephone calls and utilize a telecommunications device without disclosing his identity and with intent to annoy, abuse, threaten and harass any person at the called number and any person who received the communications," in violation of 47 U.S.C. § 223(a)(1)(C).

Meanwhile, Antonius submitted his report on June 7, 2013. Several pieces of information in the report have drawn the Court's attention. Antonius apparently

asked defendant for permission to contact family members as part of the evaluation; defendant refused permission, claiming that his relatives might provide "an inaccurate clinical picture of who he is." Antonius reported that defendant has a propensity for making impulsive decisions and for using a potentially maladaptive style of expressing anger but is at relatively low risk for violent behavior toward others. Antonius reported further that there is no indication that defendant has any of the common risk factors for a propensity for violence, including addictions, employment concerns, psychotic or manic mood illnesses, or psychopathic traits or a personality disorder. Antonius reported further that defendant has drawn up plans either to return to the restaurant where he had been working or to enter culinary school to become a cook, and also has plans to continue counseling and psychiatric treatment. Antonius described those plans as realistic. Antonius also reported the procedures that he used in his psychological evaluation: a three-hour clinical interview; the Rorschach Inkblot Test; the Personality Assessment Inventory; the Psychopathic Personality Inventory-Revised; the State-Trait Anger Expression Inventory; the Historical-Clinical-Risk Management-20; and the Evaluation of Competency to Stand Trial-Revised. In short, all of these tests indicated to Antonius that defendant has poor social skills, depressive symptoms, and difficulty handling impulses and stressors. Nonetheless, and despite a diagnosis of borderline intellectual functioning from another psychologist, Antonius found defendant to have the

cognitive capacity to make well-reasoned decisions about aspects of his daily life and to respond from continued psychiatric care if released. Antonius also found that defendant has an excellent ability to process factual information and understands his current legal situation.

On the basis of the Antonius report, defendant filed the pending motion on August 13, 2013. Defendant highlights Antonius's conclusion that he presently is at relatively low risk for violent behavior toward others. Defendant argues further that he is a lifelong resident of Western New York and believes that he would be able to return to his former employer if released. Defendant also expresses interest in enrolling in a local culinary arts program tailored for disabled people. Defendant proposes living with his grandmother initially while seeking his own residence. The Government opposes the motion, citing both the telephone calls to Canada and the January 2013 voicemail message that led to his expulsion from the Pretrial Diversion Program. The Government concludes that defendant has difficulty controlling his behavior despite prior criminal prosecutions and that "presently" presenting a low risk for violence does not preclude sudden changes in the future. The USPO recommends continued detention based on defendant's poor impulse control and out of concern that the stress of finding an apartment, searching for employment, and dealing with legal issues will overwhelm his coping mechanisms and lead to impulsive behavior again.

## III. DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.' U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (citations omitted). "To order detention, the district court must

7

find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence. The rules of evidence do not apply in a detention hearing. Further, the government may proceed by proffer." *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

Once the Court has issued a detention order in the manner set forth above, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). Where evidence was available to defendant at the time of the hearing, the hearing will not be reopened. See *U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Here, the Court will accept the Antonius report as a genuine change in circumstances, as it said that it would when it previously denied bail without prejudice. The Antonius report provides the Court with detailed information about

8

defendant's history and family background, even despite defendant's unwillingness to have family members interviewed.  The Antonius report also presents detailed results and analysis of multiple psychological tests that defendant underwent with Dr. Antonius.  The Government does not contest that anyone in this case had such detailed information the last time the Court considered defendant's detention status.  The Court thus will proceed from the preliminary step of deciding whether to reconsider bail to the substantive step of what that reconsideration should be.

 Although the Court has serious concerns about how thoughtlessly defendant threw away a very favorable pretrial diversion agreement, several factors weigh in favor of one, but only one, chance at pretrial release.  The Antonius report indicates that defendant has shown enough insight into his situation to feel regret for the violation of his pretrial diversion agreement.  The Antonius report indicates further that defendant has responded and will continue to respond to counseling and psychiatric treatment for his poor impulse control and for his difficulty in handling stressors.  The possibility that defendant can acquire cognitive tools to manage impulses and stress distinguishes him from defendants who showed no insight into or ability to control impulsive behavior. *Cf., e.g., U.S. v. Melendez-Carrion*, 790 F.2d 984, 1003 (2d Cir. 1986) ("The Supreme Court has upheld the constitutionality of a statute authorizing preventive detention of sexual psychopaths, deeming them to be persons unable to control

their impulses.") (citations omitted); U.S. v. Ali, No. 05 CR 936, 2005 WL 3115876, at *1 (N.D. Ill. Nov. 18, 2005) (denying bail where the defendant's threats of suicide bombing "were, to say the least, extraordinarily disconcerting and confirmed Mr. Ali's lack of impulse control and instability"). Finally, the Antonius report indicates that defendant has realistic plans to enroll in culinary school, to find work at a former employer or as a cook upon graduating from culinary school, and to continue counseling and psychiatric treatment. Combined with defendant's willingness to submit to electronic monitoring at his grandmother's residence, the factors cited in the Antonius report create a plausible scenario in which some combination of conditions of release can balance defendant's liberty interests with the need to protect the community from danger.

    The Government's opposition to release is understandable but does not offset the factors cited above. The Government makes reference to the harassing telephone calls to various people in Mississauga, but those calls were part of defendant's history when the Government agreed to pretrial diversion. Additionally, the record contains some indication that the Government, while insisting that any plea cover felony and not misdemeanor charges, would not lobby for a plea and sentence that led to a term of imprisonment. The Government's position dovetails with the reality that, unless the Government advocates for life-long detention and imprisonment, defendant will return to

society at some point. To have a successful release and reintegration, defendant will need to acquire cognitive tools to manage his behavior. The Government has not established why a serious attempt at cognitive improvement cannot begin now, while defendant would benefit from the structure of regular contact with the USPO.

Despite its willingness to allow defendant one chance at release, the Court acknowledges that "the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks." *U.S. v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir. 1986), *superseded in part on other grounds by* Fed. R. Crim P. 5(c). Defendant made his way through a Canadian prosecution without imprisonment, but then (allegedly) made numerous telephone calls to various officials in Ontario. Defendant made his way through a prosecution stemming from those telephone calls and received a very favorable outcome of the pretrial diversion, but then threw that outcome away almost immediately by (allegedly) threatening his former attorney. The Court strongly cautions defendant to use counseling, the USPO, and his attorney to learn whatever cognitive skills might be necessary to break his pattern of throwing away favorable legal outcomes; this Court will not consider pretrial release again if any violations occur.

Meanwhile, the Court needs to set conditions of release that are strict enough to match the risk of release. At a minimum, the conditions will have to

11

include the following: 1) release to his grandmother's residence if the USPO confirms the suitability of that residence; defendant has mentioned the possibility of living alone in the future, but the Court will not consider letting defendant live alone until a counselor, forensic psychologist, or other mental health expert reports that he has acquired the cognitive ability to do so; 2) bail in the amount of $5,000 with the signature of at least one surety; 3) electronic monitoring that will begin with home confinement, but with the possibility of a change to a curfew upon successful establishment of employment or education plans; 4) absolutely no communication, however direct or indirect, with any alleged victims or potential witnesses, with zero tolerance for any violations; 5) no use of a telephone, outside of calling the USPO or a genuine medical, police, or fire emergency, without advance permission from the USPO; 6) continued outpatient counseling and treatment that, at a minimum, addresses the issues of impulse control and stress management; and 7) any other standard or special conditions of release that the USPO may recommend. If the USPO can confirm the suitability of the proposed residence and the availability of outpatient treatment, and if defendant can furnish bail and a surety, then the Court will set a status conference to finalize the bail paperwork and the conditions of release.

     On another matter, the Court stated at the bail review hearing that this Decision and Order would include a new pretrial schedule. The Court instead will set a new pretrial schedule in a separate electronic Text Order.

## IV. CONCLUSION

For all of the foregoing reasons, the Court grants defendant's motion for bail (Dkt. No. 32) conditionally. The Court will release defendant only when he satisfies the minimum conditions set above and appears for further proceedings to finalize those conditions and any others that the USPO may recommend.

Pursuant to 18 U.S.C. § 3142(h)(2), the Court hereby warns defendant that committing any criminal offense while on pretrial release will lead, in addition to any sentence imposed for any conviction in this case, to an additional sentence of as much as 10 years under 18 U.S.C. § 3147. The Court warns defendant further that a violation of any condition of release may lead to an immediate issuance of a warrant for his arrest. Finally, the Court hereby places defendant on notice of 18 U.S.C. §§ 1503 (relating to intimidation of witnesses, jurors, and officers of the court), 1510 (relating to obstruction of criminal investigations), 1512 (tampering with a witness, victim, or an informant), and 1513 (retaliating against a witness, victim, or an informant).

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order shall be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

                                                 /s/ *Hugh B. Scott*
                                                 HONORABLE HUGH B. SCOTT
                                                 UNITED STATES MAGISTRATE JUDGE

DATED: September 18, 2013